## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Jhon Peter HYPPOLITE,<br><br>    *Petitioner*<br><br>      v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; PAMELA BONDI, Attorney General of the United States, in her official capacity; KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, in her official capacity; U.S. DEPARTMENT OF HOMELAND SECURITY; TODD LYONS, Acting Director of the U.S. Immigration and Customs Enforcement, in his official capacity; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; MARCO RUBIO, Secretary of State, in his official capacity; U.S. DEPARTMENT OF STATE; RUSSELL HOTT, Acting Director of New York Field Office for U.S. Immigration and Customs Enforcement, in his official capacity; SIRCE E. OWEN, Acting Director of the Executive Office for Immigration Review, in her official capacity; RAUL MALDONADO, JR., Warden of Metropolitan Detention Center, in his official capacity;<br><br>*Respondents–Defendants.* | Civil Action No. 1:25-cv-04304-NRM<br><br>**FIRST AMENDED VERIFIED PETITION FOR WRIT OF HABEAS CORPUS** |

    Petitioner JHON PETER HYPPOLITE submits this verified first amended petition for writ of habeas corpus, by and through undersigned counsel, and alleges as follows:

### INTRODUCTION

1. Petitioner Jhon Peter Hyppolite ("Petitioner" or "Mr. Hyppolite") brings this amended petition to challenge his unlawful detention on July 8, 2025, following a routine appearance at the Executive Office of Immigration Review ("EOIR"), Office of the Chief

Immigration Judge located in New York, New York-201 Varick Street, 5th Floor, New York, NY 10014.

2.  Mr. Hyppolite came to the United States seeking safety.  He arrived at the U.S.-Mexico border on or about December 19, 2022. He was paroled pursuant to 8 U.S.C. § 1182(d)(5)(A), issued an I-94 and released all in the same day. *See* Ex. 1, I-94, Arrival/Departure Record.

3.  On January 15, 2023, Mr. Hyppolite was served with an updated Notice to Appear ("NTA") that required him to appear before an Immigration Judge at 201 Varick Street, 5th Floor, Room 507, New York, NY 10014 on March 19, 2024, at 8:30am. *See* Ex. 2, Notice to Appear, dated January 15, 2023. Mr. Hyppolite was charged with removability under 8 U.S.C. § 1182(a)(7)(A)(i)(I), Immigration and Nationality Act (INA) § 1182(a)(7)(A)(i)(I).

4.  Mr. Hyppolite complied with the NTA; he appeared at the 201 Varick Street Immigration Court on March 19, 2024.  The appearance was adjourned to a later date.  Mr. Hyppolite appeared for every subsequent court appearance.

5.  In November 2024, Mr. Hyppolite filed an asylum petition with the court, with the help of a consultant, who is not an attorney. The asylum application was subsequently denied because of deficiencies.

6.  Mr. Hyppolite resubmitted his asylum application in April 2025, once again without the assistance of counsel, and it was again rejected.

7.  On July 8, 2025, Mr. Hyppolite appeared at the Varick Street Immigration Court for a master calendar hearing of which he had not received notice, but that he learned about

online while routinely checking EOIR's Automated Case Information System (ACIS). Mr. Hyppolite did not received notice of the hearing.

8. At the hearing, the IJ adjourned Mr. Hyppolite's next hearing to February 3, 2026, for adjudication of his asylum petition. At the close of the hearing, and as soon as Mr. Hyppolite stepped outside, Mr. Hyppolite and his U.S. citizen father were detained by Respondents.[1] Mr. Hyppolite's hands and ankles were immediately cuffed.

9. Despite asking numerous times, Mr. Hyppolite was never told why he was being detained. When he tried to explain that he had a Temporary Protected Status ("TPS") application pending and that his court case was adjourned to February 2026, he was ignored by Respondents.

10. After detaining Mr. Hyppolite, Respondents transferred him to 26 Federal Plaza, where they continued to detain him in harsh conditions for the following 6 days. While at 26 Federal Plaza, Mr. Hyppolite received little food or water; he had limited access to bathroom facilities and a shower; and he had to sleep on the floor with no linens.

11. On July 14, 2025, Mr. Hyppolite was transferred to the Metropolitan Detention Center ("MDC") in Brooklyn,[2] where he remains detained to this date. *See* Ex. 3, Form I-830, Notice to EOIR: Alien Address. The conditions at MDC are not much different from those at 26 Federal Plaza.

12. Mr. Hyppolite was only able to retain an attorney in his immigration proceedings after he was detained. Keiana James, an attorney with The Bronx Defenders, was assigned to his case as part of the New York Family Immigrant Unity Project ("NYIFUP").

---

[1] Mr. Hyppolite's father was released once his immigration status was verified.
[2] Upon information and belief, the Federal Bureau of Prisons (BOP) has an interagency agreement with ICE to house immigration detainees at several BOP facilities, including MDC in Brooklyn. As of the date of this amended petition, it is unknown how many people with underlying immigration cases are being detained at MDC.

13. With Attorney James's assistance, Mr. Hyppolite resubmitted his asylum petition for the third time on September 2, 2025. This time the application was accepted.

14. On August 4, 2025, Mr. Hyppolite filed a *pro se* petition for a writ of habeas corpus, with his father ██████████████ serving as next friend. *See* ECF 1, Pro Se Petition.

15. On August 8, 2025, the Court enjoined Mr. Hyppolite's removal from the United States and transfer from the Eastern District of New York, the Southern District of New York, or the District of New Jersey absent further order. *See* ECF 4, Scheduling Order at 1-2. The Court also ordered Respondents to respond to the petition by September 8, 2025, and Petitioner to file his reply, if any, by September 15, 2025. *Id*. at 3.

16. Respondents failed to file their response by September 8, 2025. Instead, Respondents wrote the Court on September 10, 2025, to confirm that Mr. Hyppolite was detained at MDC, to apologize for missing the deadline, and to inform the Court that they would provide a further update the next day. *See* ECF 7, Ltr. in Partial Response to the Court's Orders (Sept. 10, 2025).

17. On September 11, 2025, Respondents again wrote the Court to confirm that they would comply with the Court's order regarding transfer and to state that the United States Attorney's Office was continuing "to obtain facts relevant to the adjudication of this matter." ECF 8, Ltr. in Further Response to the Court's Orders of August 8 and September 9, 2025 (Sept. 11, 2025).

18. On the same day, Respondents filed a motion to extend the deadline for their response. *See* ECF 9, First Motion for Extension of Time (Sept. 11, 2025).

19. On September 15, 2025, Respondents filed their response to the Petition. *See* ECF 11, Ltr. Regarding Response.

20. On September 16, 2025, undersigned counsel entered appearances on behalf of Mr. Hyppolite.

21. On September 18, 2025, the Court held at a status conference with Petitioner and counsel for both parties present. Respondents failed to produce Petitioner in time for the hearing, which was delayed by approximately four hours. Following the conference, the Court granted Petitioner leave to file this Amended Petition and a reply to Respondents' opposition, due on September 25, 2025.

22. Mr. Hyppolite's confinement is unlawful, and he brings this Petition seeking immediate and unconditional release. He also asks this Court to permanently enjoin his transfer out of the jurisdiction of this Court.[3]

## PARTIES

23. Petitioner Jhon Peter Hyppolite is a citizen of Haiti who lives in ███████████. He is detained at the Metropolitan Detention Center (MDC) in Brooklyn at the time of the filing of the instant petition. On the afternoon of July 8, 2025, Mr. Hyppolite was taken into custody by Respondents. Mr. Hyppolite spent 6 days detained at 26 Federal Plaza. Thereafter, he was transferred to MDC, where he remains detained to this day.

24. Respondent Russell Hott is named in his official capacity as the Acting Field Office Director of the New York Field Office for Immigration and Customs Enforcement ("ICE") within the United States Department of Homeland Security. In this capacity, he is also responsible for the administration of immigration laws and the execution of detention and removal determinations and is a legal custodian of Petitioner. Respondent

---

[3] See ECF 4 at 2.

Hott's address is New York ICE Field Office Director, 26 Federal Plaza, 7th Floor, New York, New York 10278.

25. Respondent Raul Maldanado is sued in his official capacity as Warden of the Metropolitan Detention Center. Respondent Maldanado is a legal custodian over Mr. Hyppolite.

26. Respondent Todd Lyons is sued in his official capacity as Acting Director of U.S. Immigrations and Customs Enforcement. As the Acting Director of ICE, Respondent Lyons is a legal custodian of Mr. Hyppolite.

27. Respondent Kristi Noem is named in her official capacity as the Secretary of Homeland Security in the United States Department of Homeland Security. In this capacity, she is responsible for the administration of the immigration laws pursuant to 8 U.S.C. § 1103(a)(2007); routinely transacts business in the Eastern District of New York; is legally responsible for pursuing any effort to remove Petitioner; and as such is a legal custodian of Mr. Hyppolite. Respondent Noem's address is U.S. Department of Homeland Security, 800 K Street, N.W. #1000, Washington, District of Columbia 20528.

28. Respondent Pam Bondi is named in her official capacity as the Attorney General of the United States. In this capacity, she is responsible for the administration of the immigration laws as exercised by the Executive Office for Immigration Review ("EOIR"), pursuant to 8 U.S.C. § 1103(g). She routinely transacts business in the Eastern District of New York and is legally responsible for administering Petitioner's removal and custody proceedings and for the standards used in those proceedings. As such, she is a legal custodian of Mr. Hyppolite. Respondent Bondi's office is located at the United States Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, DC 20530.

29. Respondent Sirce E. Owen is sued in her official capacity as Acting Director of the Executive Office for Immigration Review. As the Acting Director of EOIR, Respondent Owens is responsible for the administration of immigration laws pursuant to 8 U.S.C. § 1103(g). She is legally responsible for the pursuit of Petitioner's detention and removal.

## JURISDICTION AND VENUE

30. The federal district courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the lawfulness or constitutionality of their detention by ICE. *See, e.g., Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Mr. Hyppolite was detained by Respondents on July 8, 2025.

31. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 2241 (habeas corpus), and U.S. Const. art. I, § 9, cl. 2 of the United States Constitution (Suspension Clause). This Court has authority to grant declaratory and injunctive relief. 28 U.S.C. §§ 2201-2202. This Court has additional remedial authority under the All-Writs Act, 28 U.S.C. § 1651 and the Declaratory Judgment Act, 28 U.S.C. § 2201.

32. Venue is proper in the Eastern District of New York under 28 U.S.C. §§ 1391(b), (e)(1) because Petitioner is detained under the jurisdiction of the New York ICE Field Office, and a substantial part of the events or omissions giving rise to this action occurred in this district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

33. Administrative exhaustion is unnecessary because it would be futile.

34. No statutory exhaustion requirement applies to a § 2241 petition challenging the lawfulness or constitutionality of immigration detention. *Raspoutny v. Decker*, 708 F. Supp. 3d 371,

374 (S.D.N.Y. 2023) (*quoting Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003)) ("The exhaustion requirement may be excused when: '(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question.'"); *see also McCarthy v. Madigan*, 503 U.S. 140, 144-49 (1992) (delineating jurisdictional and prudential exhaustion). Thus, Mr. Hyppolite's claims of receiving a constitutionally inadequate process to justify the intrusions into his liberty interest against prolonged and indefinite detention are not subject to any statutory requirement of administrative exhaustion.

35. To the extent that any prudential considerations might lead the Court to consider requiring exhaustion as a matter of discretion, the Supreme Court has recognized that courts should not require exhaustion where there is an "unreasonable or indefinite timeframe for administrative action." *Madigan*, 503 U.S. at 147. Thus, exhaustion is not appropriate where plaintiff "may suffer irreparable harm if unable to secure immediate judicial consideration of his claim." *Id.* Similarly, exhaustion is not required where any requests for administrative relief would be futile. *Id.* at 148-49.

36. Here, there is no reason to require an exhaustion of administrative remedies. Neither the Immigration Judge nor the Board of Immigration Appeals ("BIA"), as administrative bodies, can rule on the constitutionality of Mr. Hyppolite's detention. *See Matter of C-*, 20 I. & N. Dec. 529, 532 (BIA 1992); *O.F.C. v. Decker*, *No. 22-cv-7556, 2022 WL 4448728, at *3 (S.D.N.Y. September 12, 2022) (finding the BIA lacked jurisdiction to consider the petitioner's constitutional claims). Therefore, Mr. Hyppolite has a constitutionally

protected liberty interest in his freedom from government custody. *Zadvydas*, 533 U.S. at 690.

## RELEVANT FACTS and PROCEDURAL HISTORY

37. Mr. Hyppolite is a ███████ citizen of Haiti and resident of New York City. Prior to his abrupt, unnoticed detention by Respondents on July 8, 2025, he was living in ███████ ██████

38. He came to the United States on or about December 19, 2022, seeking safety and to apply for asylum. He presented himself at a port of entry in Brownsville, Texas using the CBP One application.[4] Upon arrival, Respondents paroled Mr. Hyppolite and issued him an I-94 before releasing him. *See* Ex. 1, I-94, Arrival/Departure Record.

39. Upon information and belief, on January 15, 2023, Mr. Hyppolite was served with an updated Notice to Appear ("NTA") that required him to appear before an Immigration Judge at 201 Varick Street, 5th Floor, Room 507, New York, NY 10014 on March 19, 2024 at 8:30am. *See* Ex. 2, Notice to Appear, dated January 15, 2023. Mr. Hyppolite was charged as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I).

40. Since entering the United States, Mr. Hyppolite taught himself how to speak English and has successfully earned his GED. Mr. Hyppolite is also a caregiver for his elderly U.S. citizen father and aunt, who suffered from a stroke a couple of years ago that left her paralyzed. He also helps his cousin take care of her 4-year-old daughter, so she doesn't have to miss days of work.

41. Mr. Hyppolite does not have a criminal history in Haiti, the United States or elsewhere.

---

[4] *See also* Am. Imm. Council, CBP One: An Overview (2025), https://www.americanimmigrationcouncil.org/wp-content/uploads/2025/04/cbp_one_an_overview_0325.pdf.

42. Although he did not receive any notice of the July 8, 2025, court appearance in his immigration proceedings, Mr. Hyppolite, wanting to follow the rules and comply with all that is expected of him by Respondents, voluntarily attended the master hearing scheduled for that day. During the hearing, the IJ set his case for a final hearing on his asylum application to February 3, 2026.

43. As Mr. Hyppolite was leaving the courtroom, he and his elderly, U.S. citizen father[5] were surrounded and detained by Respondents. Not only was Mr. Hyppolite not given notice of the scheduled hearing, but he was also not given prior notice or warning that he was going to be arrested after attending his Immigration Court Hearing on July 8, 2025.

44. Respondents have not provided any explanation for their decision to detain Mr. Hyppolite.

45. Upon information and belief, Respondents served Mr. Hyppolite with an I-213, Record of Deportable/Inadmissible Alien, signed by Deportation Officer ("DO") Corrica that recites Mr. Hyppolite's immigration encounter at the border. *See* Ex. 4, I-213, Record of Deportable/Inadmissible Alien. That factual recitation is inconsistent with Respondents' prior records. Under "IMMIGRATION HISTORY," DO Corrica states that Mr. Hyppolite "unlawfully entered the United States from Mexico at a time and place other than as designated by the United States Attorney General" and that he was "processed for a Notice to Appear [and] Released as per section 212(a)(A)(i) of the Immigration and Nationality Act [8 U.S.C. § 1182(a)(2)(A)(i)]." *Id*. at 2. Mr. Hyppolite entered the United States via a port of entry and, according to Respondents' records, was charged as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I). *See, e.g.*, Ex. 2. The I-213 also states

---

[5] Mr. Hyppolite's father was released after about an hour, when his immigration status was confirmed.

10

that, when he entered the country, Mr. Hyppolite "was served with Forms I-200 [Warrant for Arrest of Alien], I-862 [Notice to Appear], I-286 [Notice of Custody Determination], [and] I-220A [Order of Release on Recognizance]." *See* Ex. 4 at 2-3. Those documents—with the exception of the Notice to Appear—would only be given to a noncitizen being released discretionarily pursuant to 8 U.S.C. § 1226(a) rather than pursuant to 8 U.S.C. § 1225(b).

46. Respondents also issued Mr. Hyppolite a Form I-286, Notice of Custody Determination stating that Mr. Hyppolite will be detained "[p]ursuant to the authority contained in [8 U.S.C. § 1226] and part 236 of title 8, Code of Federal Regulations." ECF 18-1, Ex. 5, Form I-286, Notice of Custody Determination. That statute generally provides for custody review before a neutral immigration judge. *See* 8 U.S.C § 1226(a). In Mr. Hyppolite's case, the notice states that he "may request a review of this custody determination by an immigration judge," and Mr. Hyppolite checked and signed the box stating, "**I do request an immigration judge review of this custody determination**." *Id*.

47. After his arrest on July 8, 2025, Mr. Hyppolite was transferred to 26 Federal Plaza, where he remained detained for 6 days, with little to no food, limited access to bathroom facilities and a shower, and had to sleep on the floor with no linens.

48. On July 14, 2025, Respondents transferred Mr. Hyppolite to MDC, where he remains detained to date. The conditions at MDC are not much better than those at 26 Federal Plaza.

49. In January 2025, Mr. Hyppolite filed an application for Temporary Protected Status ("TPS"). TPS is an immigration status that allows nationals of a designated country to

remain lawfully in the United States during the period or periods for which the country is designated. 8 U.S.C. § 1254a. Congress prohibits the government from removing any noncitizen with TPS. *Id.* § 1254a(a)(1)(A). Congress further provided that a noncitizen "who establishes prima facie eligibility for [TPS benefits], until a final determination with respect to the alien's eligibility for such benefits under paragraph (1) has been made . . . shall be provided such benefits." *Id.* § 1254(a)(4)(B). Mr. Hyppolite is prima facie eligible for TPS. He meets each of the statutory requirements: he has been continuously physically present since the effective date of the most recent designation of TPS for Haiti; he has continuously resided in the United States since the date designated by DHS; and none of the immigration or criminal bars in the TPS statute apply to him. 8 U.S.C. §§ 1254a(c)(1)(A)(i)-(iii), (c)(2)(A)-(B).

50. On August 21, 2025, Mr. Hyppolite's U.S. citizen father filed an I-130, Petition for Alien Relative. *See* Ex. 6, USCIS Receipt Notice for I-130, dated August 25, 2025. Mr. Hyppolite is *prima facie* eligible to adjust status pursuant to 8 U.S.C § 1255, INA § 245(a) because he was paroled into the U.S. and he currently does not appear to have any inadmissibility issues.

## **LEGAL FRAMWEWORK and ARGUMENT**

### *A. Legal Standards Applicable to Removal Proceedings*

51. Full removal proceedings pursuant to 8 U.S.C. § 1229a afford noncitizens the opportunity to present their case in full hearings before an Immigration Judge. These proceedings are the exclusive mechanism for determining a noncitizen's admissibility or removability. The statute guarantees several procedural protections, including the right to be represented by counsel of the noncitizen's choosing who is authorized to practice in such

proceedings. 8 U.S.C. § 1229a(b)(4)(A). Additionally, noncitizens are entitled to a
reasonable opportunity to examine the evidence against them, to present evidence in their
own defense, and to cross-examine witnesses presented by the government. 8 U.S.C. §
1229a(b)(4)(B).

52. Mr. Hyppolite is currently in removal proceedings under 8 U.S.C. § 1229a.

53. The actions taken against Mr. Hyppolite by Respondents cannot be justified under the
Constitution or established legal precedent, both of which strongly support his immediate
release. *See Zadvydas,* 533 U.S. at 690 ("Freedom from imprisonment—from
government custody, detention or other forms of physical restraint—lies at the heart of
the liberty that the [Due Process] Clause protects."); *id. a*t 693 ("[T]he Due Process
Clause applies to all 'persons' within the United States, including [noncitizens], whether
their presence is lawful, unlawful, temporary, or permanent.); *Reno v. Flores,* 507 U.S.
292, 306 (1993) (similar). "Procedural due process rules are meant to protect against the
mistaken or unjustified deprivation of life, liberty, or property." *AARP v. Trump*, 145 S.
Ct. 1364, 1367 (2025) (cleaned up).

54. The Supreme Court has long held that the Fifth Amendment's due process is available to
noncitizens in removal proceedings. *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well
established that the Fifth Amendment entitles [noncitizens] to due process of law in
deportation proceedings."); *Black v. Decker*, 103 F.4th 133, 137 (2d Cir. 2024).

55. Even when government action that affects a person's life, liberty, or property passes
substantive due process review, it must still be carried out in a fair and just manner.
*Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (*quoting U.S. v. Salerno*, 481
U.S. 739. 755 (1987)) ("Case after case instructs us that in this country liberty is the norm

and detention "is the carefully limited exception."); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("We have always been careful not to minimize the importance and fundamental nature of the individual's right to liberty."); *Jones v. U.S.*, 463 U.S. 354, 361 (1983) ("[I]t is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.").

56. Removal proceedings are civil, not criminal. *Zadvydas*, 533 U.S. at 690. "[The Supreme] Court has said that government detention violates [the Due Process] Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections." *Id*.; *see also Salerno*, 481 U.S. at 746. However, in certain immigration proceedings, Congress has authorized the government to detain specific classes of noncitizens during the course of those proceedings for non-punitive purposes.

57. Individuals who are arriving in the U.S. or who are subject to expedited removal because they have been present under two years and meet certain other conditions, mandatory detention is authorized under 8 U.S.C. 1225(b)(2).

**B. Campaign of Courthouse Arrests**

58. On July 8, 2025, the same day Mr. Hyppolite was taken into custody by Respondents, Respondents issued a memorandum, directing attorneys representing ICE before EOIR to argue for a more expansive interpretation of who is subject to mandatory detention. In the memo, which was later leaked to the public, DHS's position is that, effective immediately, any noncitizen who has not been admitted to the U.S.[6] is subject to mandatory detention under 235(b) and may not be released from custody except by INA § 212(d)(5), 8 U.S.C. § 1182(d)(5) parole.[7] These noncitizens are not eligible for a bond

---

[6] This includes individuals who had previously been paroled into the U.S. and that parole has since ended.
[7] *Available* ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission

hearing before an immigration judge and generally must remain in custody throughout their removal proceedings unless DHS grants them parole. [8]

59. Since the shift, an increasing number of courts—including within the Second Circuit— have rejected Respondents' expansion of their purported authority under 8 U.S.C. § 1225(b) to detain noncitizens indefinitely without a bond hearing. *See, e.g.*, *Lopez Benitez v. Francis*, No. 25 Civ. 6447, 2025 WL 2371588 at *9-12 (S.D.N.Y. Aug. 13, 2025) (ECF No. 14) ("*Lopez Benitez*"); *Kelly v. Almodovar et al*, No. 25 Civ.06448 (AT), 2025 WL 2381591 (S.D.N.Y. Aug. 15, 2025); *Chipantiza-Sisalema v. Francis*, No. 25 Civ. 5528, 2025 WL 1927931 (S.D.N.Y. July 13, 2025); *Valdez v. Joyce*, No. 25 Civ. 4627, 2025 WL 1707737, at *3 (S.D.N.Y. June 18, 2025); *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *8 (D. Mass. July 24, 2025); *Gomes v. Hyde*, No. 25 Civ. 11571 (JEK), 2025 WL 1869299 (D. Mass. July 7, 2025) and *Rodriguez v. Bostock,* No. 3:25-CV-05240-TMC, 2025 WL 1193850, at *14 (W.D. Wash. Apr. 24, 2025).

60. While civil immigration detention is statutorily authorized, its lawful justification is limited to two purposes: ensuring the individual's appearance at proceedings and protecting the community from potential harm. *See Zadvydas,* 533 U.S. at 690; *Velasco*, 978 F.3d at 854.

61. And, although civil immigration detention is permitted under statute, it cannot infringe upon an individual's liberty without sufficient procedural safeguards. *See Zadvydas*, 533 U.S. at 690–91. The Second Circuit has confirmed that the *Mathews v. Eldridge* balancing test governs the adequacy of procedural protections in the context of civil immigration confinement. *See Velasco*, 978 F.3d at 851 (citing *Mathews v. Eldridge*,

---

[8] *Id.*

424 U.S. 319 (1976)). Under *Mathews*, courts must weigh the: (1) private interest affected by the government action; (2) risk of erroneous deprivation under existing procedures and the potential value of additional safeguards; and (3) government's interest, including the function at issue and the fiscal and administrative burdens of additional procedures. *Mathews*, 424 U.S. at 335.

62. The *Mathews* test requires procedural safeguards sufficient to reduce the risk of erroneously depriving an individual of a protected liberty interest. The revocation of conditional release from custody—even in the context of civil immigration detention— implicates such an interest. Courts have long recognized that individuals possess a liberty interest in conditional release, as established in the contexts of parole, probation, and immigration detention. *See Valdez*, *No., 25 Civ. 4627, 2025 WL 1707737, at *3 (S.D.N.Y. June 18, 2025) (finding that the petitioner's 'liberty interest is clearly established'); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) (drawing on parole and probation case law to conclude that the petitioner had a 'liberty interest in remaining out of [immigration] custody').

63. With respect to procedural protections, at a minimum, due process in the context of revoking civil immigration release requires that the individual be provided notice of the grounds for revocation, an opportunity to be heard at a hearing, and the ability to present testimony. *See Villiers v. Decker*, 31 F.4th 825, 833 (2d Cir. 2022).

64. Despite these foundational due process requirements, Respondents routinely re-detain individuals like Petitioner without notice, with no procedural safeguards, and with no allegation that they are a danger or a flight risk. Such detentions violate noncitizens' constitutional right to due process. *See Lopez*, 2025 WL 2371588, at *15 (ordering

16

immediate release and observing that 'Respondents seem to be detaining some arbitrary portion of such individuals as they leave their regularly scheduled immigration court proceedings. But treating attendance in immigration court as a game of detention roulette is not consistent with the constitutional guarantee of due process.'); *Kelly*, 2025 WL 2381591, at *3 (ordering release and stating that '[t]he suggestion that government agents may sweep up any person they wish and hold that person...without consideration of dangerousness or flight risk...offends the ordered system of liberty that is the pillar of the Fifth Amendment.'); *Chipantiza*, 2025 WL 1927931, at *3 (ordering release where redetention violated due process despite allegations of flight risk or danger); and *Valdez*, 2025 WL 1707737, at *4 (finding that detention without notice, changed circumstances, or opportunity to respond violated petitioner's due process rights)."

## CLAIMS FOR RELIEF

### COUNT ONE
### Violation of the Due Process Clause of the Fifth Amendment
### (Substantive Due Process)

65. Mr. Hyppolite repeats and re-alleges the allegations contained in all preceding paragraphs of this Petition as fully set forth herein.

66. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. Noncitizens unquestionably have a substantive liberty interest to be free from detention. *See id.*

67. Because 'liberty is the norm, and detention prior to trial or without trial is the carefully limited exception,' the government may only detain individuals preventively under narrowly defined circumstances. *Foucha*, 504 U.S. at 83 (*quoting United States v.*

*Salerno*, 481 U.S. 739, 755 (1987)). As a form of civil confinement, immigration detention must be reasonably related to its intended purpose and must not be punitive in either intent or effect. *Zadvydas*, 533 U.S. at 690 (cleaned up). *See also Schall v. Martin*, 467 U.S. 253, 264 (1984) (holding that detention must be a proportionate response to a legitimate government interest).

68. Courts have recognized only two lawful justifications for immigration detention: preventing flight risk and protecting the community from danger. *See Zadvydas,* 533 U.S. at 690; *Velasco*, 978 F.3d at 853–54; *Faure v. Decker*, *No. 15 Civ. 8146, 2015 WL 6143801, at *3 (S.D.N.Y. Oct. 19, 2015) (ordering release or a bond hearing where there was 'no evidence' the petitioner posed a danger or flight risk during removal proceedings).Mr. Hyppolite's continued detention serves neither of these purposes.

69. Mr. Hyppolite is not a flight risk nor is he a danger to the community. From the time he entered the country to the time he was detained, he has followed all the procedures and requirements of the immigration system, including attending his immigration hearings. Respondents' detention of Mr. Hyppolite is therefore unjustified and unlawful.

70. Also, because of Mr. Hyppolite's *prima facie* eligibility for TPS, his removal is a remote possibility at best.

71. The government is not detaining Mr. Hyppolite to advance its legitimate interests in preventing flight or protecting public safety. Rather, like many others arrested at courthouses, Mr. Hyppolite is being held for the plainly impermissible—though administratively convenient—reason that he was easy to find. He was exactly where the government instructed him to be in order to pursue his asylum claim. But, as the court in *Ceesay v. Kurzdorfer* made clear, 'while [DHS] might want to enforce this country's

immigration laws efficiently, it cannot do that at the expense of fairness and due process.'
No. 25 Civ. 1123, 2025 WL 1284720, at *1 (W.D.N.Y. May 2, 2025). Because Mr.
Hyppolite's detention bears no 'reasonable relation' to the government's stated interests in
mitigating flight risk or danger, it is both unjustified and unlawful. *See Jackson v.
Indiana*, 406 U.S. 715, 738 (1972); *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp.
3d 1163, 1172 (W.D. Wash. 2023) (holding that due process prohibits immigration
detention that is not reasonably related to effectuating removal or addressing flight or
safety concerns).

72.  Accordingly, Mr. Hyppolite is being detained in violation of his Constitutional right to
Due Process under the Fifth Amendment.

**COUNT TWO**
**Violation of the Due Process Clause of the Fifth Amendment**
**(Procedural Due Process)**

73. Mr. Hyppolite repeats and re-alleges the allegations contained in all preceding paragraphs
of this Petition as fully set forth herein.

74. The Due Process Clause of the Fifth Amendment protects all "person[s]" from
deprivation of liberty "without due process of law." U.S. Const. amend. V.

75. "An essential principle of due process is that a deprivation of life, liberty, or property 'be
preceded by notice and opportunity for hearing appropriate to the nature of the case.'"
*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (*quoting Mullane v. Cent.
Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)). "[N]otice must be of such nature as
reasonably to convey the required information." *Mullane*, 339 U.S. at 314.

76. Respondents have violated Mr. Hyppolite's right to procedural due process by detaining
him with no notice and without a meaningful opportunity to challenge the justification for

his detention. Arresting and detaining him without affording a chance to contest that detention before a neutral decisionmaker—after he has lived in the United States for almost three years—violates the Due Process Clause of the Fifth Amendment.

77. To remedy this type of procedural due process violation, courts frequently order immediate release and/or a pre-deprivation hearing before a neutral decisionmaker where the government bears the burden to show by clear and convincing evidence that the petitioner's detention is a danger or flight risk.[9]

**COUNT THREE**
**Unlawful Application of 8 U.S.C. § 1225(b)**

78. Mr. Hyppolite repeats and re-alleges the allegations contained in all preceding paragraphs of this Petition as fully set forth herein.

79. Upon information and belief, Respondents are currently detaining Mr. Hyppolite pursuant to 8 U.S.C. § 1225(b).

80. At the time Respondents detained Mr. Hyppolite, he was not seeking admission to the United States; rather, he was already residing within the country. *See Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *8 (D. Mass. July 24, 2025).

---

[9] *See, e.g.*, *R.D.T.M. v. Wofford*, No. 1:25-cv-1141 (KES) (SKO), 2025 WL 2686866, at *8 (E.D. Cal. Sept. 18, 2025) (enjoining ICE from re-detaining petition without a pre-deprivation hearing before a neutral decisionmaker where the government must show that the petitioner is a danger or flight risk by clear and convincing evidence); *Pablo Sequen v. Kaise*, --- F. Supp. 3d ----, No. 25-cv-6487 (PCP), 2025 WL 2650637, at *10 (N.D. Cal. Sept. 16, 2025) (same); *Garcia v. Andrews*, No. 1:25-cv-1006 (JLT) (SAB), 2025 WL 2420068, at *13 (E.D. Cal. Aug. 21, 2025); *see also Mata Velasquez v. Kurzdorfer*, --- F. Supp. 3d ----, No. 25-cv-493 (LJV), 2025 WL 1953796, at *18 (W.D.N.Y. July 16, 2025) (enjoining re-detention "without leave of this Court."). The clear and convincing standard should apply to any hearing ordered by the Court. *See, e.g.*, *Velasco*, 978 F.3d at 855-57 (applying clear and convincing standard to a bond hearing pursuant to 8 U.S.C. § 1226(a)); *Black*, 103 F.4th at 155-58 (same for bond hearing pursuant to 8 U.S.C. § 1226(c)).

81. Accordingly, the application of 8 U.S.C. § 1225(b)—which governs the treatment of individuals seeking admission at the border—is inapplicable and unlawful in Mr. Hyppolite's case.

## COUNT FOUR
## Violation of the Administrative Procedure Act
### (Arbitrary and Capricious)

82. Mr. Hyppolite repeats and re-alleges the allegations contained in all preceding paragraphs of this Petition as fully set forth herein.

83. Upon Mr. Hyppolite's arrival, the government initiated removal proceedings under 8 U.S.C. § 1229a, and those proceedings remain pending while his asylum application is under review.  No final determination has been made regarding his removability.

84. Despite the ongoing § 1229a proceedings, the government has attempted to subject Mr. Hyppolite to mandatory detention under 8 U.S.C. § 1225(b)(2), a statutory framework that applies to individuals seeking admission who have not been formally placed into removal proceedings under § 1229a. This action is inconsistent with the government's prior decision to initiate § 1229a proceedings and fails to acknowledge or reconcile the legal and procedural implications of that decision.

85. The government's attempt to apply § 1225(b)(2) detention while § 1229(a) proceedings are still pending constitutes arbitrary and capricious agency action in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). The agency has failed to consider the reliance interests created by its initial decision to parole Mr. Hyppolite into the U.S. and acted in a manner contrary to the structure and purpose of the statutory scheme.

86. Additionally, the government's decision to detain Mr. Hyppolite during the pendency of his § 1229a proceedings without providing him with adequate procedural safeguards— such as notice and an opportunity to be heard—further underscores the arbitrary and

capricious nature of its conduct and violates both the APA and the Due Process Clause of the Fifth Amendment.

### COUNT FIVE
### Release Pending Adjudication

87. Mr. Hyppolite repeats and re-alleges the allegations contained in all preceding paragraphs of this Petition as fully set forth herein.

88. Pursuant to *Mapp v. Reno*, this Court possesses the inherent authority to grant bail to a habeas petitioner pending adjudication of the underlying petition where: (1) the petition raises substantial constitutional or statutory claims; (2) extraordinary circumstances are present; and (3) release is necessary to ensure the effectiveness of the habeas remedy. 241 F.3d 221, 226 (2d Cir. 2001).

89. Mr. Hyppolite satisfies all three prongs. He raises substantial claims, including that his detention is unlawful under both the Due Process Clause and the Administrative Procedure Act. He also faces extraordinary circumstances: he is an asylum seeker who fears persecution or death if returned to his country of origin; he fully complied with immigration authorities prior to his detention; he was previously held in inhumane conditions at 26 Federal Plaza; and he is currently confined in a jail setting without access to appropriate medical care,[10] infringing on his fundamental rights.

90. Moreover, the government's decision to detain Mr. Hyppolite—despite his prior parole and ongoing compliance—without a clear, reasoned explanation or individualized assessment, reflects an arbitrary and capricious agency action in violation of the APA, 5

---

[10] At the September 18, 2025 hearing in the instant matter, Mr. Hyppolite shared with the Court that he was not receiving proper medical care at MDC. Specifically, he shared that he has been experiencing high blood pressure since arriving at MDC, but he has yet to receive any medication to regulate his numbers. Mr. Hyppolite further shared that the weekend of September 12th, he was locked in his cell for 3 days with little food or water, no access to a shower, and no explanation from MDC for the lockdown.

U.S.C. § 706(2)(A). This further supports the necessity of his release pending resolution of the habeas petition.

91. Because he meets the requirements for release pending adjudication under *Mapp*, Mr. Hyppolite respectfully requests that—should additional time be necessary to adjudicate this petition—the Court release him on reasonable conditions pending such final adjudication.

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court:

a. Assume jurisdiction over this matter;

b. Enjoin the Respondents from transferring Petitioner away from the jurisdiction of this District pending the adjudication of his removal proceedings;

c. Declare that Petitioner's arrest and detention violates the Due Process Clause of the Fifth Amendment; the Administrative Procedure Act; and the Immigration and Nationality Act and implementing regulations;

d. Issue a Writ of Habeas Corpus ordering Respondents to immediately release Petitioner from custody without restraints on his liberty beyond those that existed prior to his unlawful detention;

e. Enjoin Respondents from re-detaining Petitioner during the pendency of his removal proceedings without a pre-deprivation hearing before this Court at which the government bears the burden to show that his detention is justified by clear and convincing evidence;

f. Order Respondents to show cause why the writ should not be granted within three days, and set a hearing on this Petition within five days of the return, as required by 28 U.S.C. § 2243;

g.  Award reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412; and

h.  Grant such further relief as this Court deems just and proper.

Dated: September 25, 2025,                          Respectfully submitted,
       Washington, D.C.


                                                   */s/ Cassandra Charles*
                                                   Cassandra Charles
                                                   Bar No: 5540133
                                                   National Immigration Law Center
                                                   P.O. Box 34573
                                                   Washington, D.C. 20043
                                                   Telephone: 213-639-3900
                                                   Fax: 213-639-3911
                                                   Email: charles@nilc.org

                                                   Kevin Siegel
                                                   Bar No: 5800511
                                                   National Immigration Law Center
                                                   P.O. Box 34573
                                                   Washington, D.C. 20043
                                                   Telephone: 410-530-6466
                                                   Email: siegel@nilc.org

                                                   Marlene Nathalie Berroa Rodriguez
                                                   Bar No: 6208508
                                                   National Immigration Law Center
                                                   P.O. Box 34573
                                                   Washington, D.C. 20043
                                                   Telephone: 202-384-1276
                                                   Email: berroa@nilc.org

                                                   *Attorneys for Petitioner*

## <u>VERIFICATION STATEMENT, 28 U.S.C. § 2242</u>

I, Cassandra Charles, am submitting this verification on behalf of the Petitioner because I am one of the Petitioner's attorneys.  I have discussed the events described in this petition with Petitioner., Jhon Peter Hyppolite. On the basis of these discussions, I hereby verify that the statements made in the foregoing Petition for Writ of habeas Corpus are true and correct to the best of my knowledge.

<u>*/s/ Cassandra Charles*</u>
Cassandra Charles
*Attorney for Petitioner*
